W. F. Taylor and Wirt Taylor *v.* McGill and. Wife, Adm'x.

1. STATUTES. *Construction of.* That which is not in the purpose or meaning, nor within the mischief to be remedied, cannot be held to be included in the statute, although within its letter.

2. STATUTE OF LIMITATIONS. *Absence of administrator from State. Arrest of statute. Heir at law.* While it has been held that the absence of the administrator from the State will arrest the statute, yet, if the creditor may proceed against the heir at law, and make the absent administrator a party by publication, the statute will not be arrested.

3. SAME. *Same. Pleading.* When the absence of the administrator from the State is relied upon by the complainant to arrest the statute, the facts should be stated with reasonable certainty.

4. CHANCERY PLEADINGS AND PRACTICE. *Parties. Title in administrator. When heir at law a necessary party.* When land of intestate is levied upon in his lifetime, and sold subsequent to his death, and purchased by the administrator of intestate, with his own means and for himself, and a conveyance taken from the sheriff, in a suit by creditors of intestate to reach the land, it seems, the heirs at law are necessary parties.

FROM DAVIDSON.

Appeal from the Chancery Court at Nashville. W. F. COOPER, Ch.

GOODLETT & BANKS for complainants.

T. S. FOSTER for defendants.

FREEMAN, J., delivered the opinion of the court.

The first of these bills was filed March 20, 1874, the latter, September 18, 1874.

They go substantially on the same grounds, and may be summarized as follows:

They are bills filed by the respective complainants, claiming to be creditors of A. Hynes Ewing, deceased, against McGill and wife, the latter being the widow of Ewing, who has since intermarried with McGill, and who was and is the administratrix of her deceased husband's estate.

The first party claims a debt due by various judgments in the quarterly court of Todd county, Kentucky, obtained December, 1869, transcripts of which appear in the record. The second claims to be creditor as evidenced by certain promissory notes filed as exhibits with his bill.

Both bills seek satisfaction of the debts claimed out of what is assumed to be the estate of A. Hynes Ewing, deceased, descended to his heirs through and against the administratrix, the husband being made party merely for conformity and as husband.

The first bill states the death of Ewing to have occurred at blank date, and the fact of administration having been granted to the wife by the county court of Montgomery county, Tennessee.

It is not charged in this bill that any personal estate of the deceased ever came to the hands of the administratrix, or ought to have come; but, after stating the fact of the recovery of a judgment by one Marshall against Ewing, in September, 1869, for $800, says there was not personal assets to pay this sum. As to personalty that might have came to the hands of the administratrix from the estate of the late father

of deceased, it is simply admitted that complainant does not know whether any such had been received. We take it the result of the allegations can only be, that there is no charge of any personalty in the hands of the administratrix, or that any ought by due diligence to have been received. It is true it is charged in the first bill that she had received the proceeds of a life policy on her husband's life for $10,000, and in the second the same charge is made, with the addition that she was suing or seeking to collect another, and it is evident the draftsman of the bill went on the theory that this money should be treated as assets of the estate, or any rate hoped to derive some benefit from it to his case. This we understand now, however, to be abandoned, or not pressed in argument, and so need not be further noticed.

The real case intended to be made by these bills, and on which the contest is now had, is, that on the death of A. Hynes Ewing he was owner, by inheritance or devise, of an undivided interest in the real estate of his late father, the Hon. Andrew Ewing, said estate situated partly in and partly near the city of Nashville. It is charged in the bills that this interest was, by direction and procurement of the administratrix, levied on by an execution issued on the judgment of Marshall, above referred to, from the circuit court of Montgomery county, and when sold was bought in by the administratrix and widow for about the sum of $900, and that this purchase was a fraud of a very gross character on the rights of these cred-

itors. This is attempted to be strengthened by charging that she had rendered no inventory to the county court, and had never given any information of the existence of this real estate, with a good deal of other irrelevant matter.

The legal inference drawn from all this, however, is simply that the administratrix and widow, having purchased the property of her husband thus sold, however purchased, whether with her own or the money of the estate, holds it as an express, or certainly as an implied trustee for the creditors of the husband, and the same is subject to be sold for the payment of the debts of complainants. This is the main theory of the bills, and with the incidental question presented by the answer of the statute of limitations of three years in favor of administrators (the parties being non-residents), this is the issue between the parties and the questions to be decided.

We may remark here, that it is not charged that the purchase was made with moneys of the estate, and if so, the fact is not that way, as no such money is shown to have been on hand. It is probable the purchase was made out of proceeds of the life insurance policy received by the wife, and was made for her own benefit, and the deed, after her marriage perhaps, taken from the sheriff to herself.

It is proper to add, that A. Hynes Ewing died leaving no child, but, as is stated in the bills, leaving half brothers and sisters, who are charged to be his heirs, but not made parties to this proceeding.

The answer of respondents denies all fraud, and

says that no inventory was returned because there was no personalty to return, the dwelling-house of the deceased having been burned not long before his death, in which his household property was consumed, since which time to his death he and his wife had boarded with a family living near by.

As to the real estate in controversy the answer shows, as stated in the bills, that it had been levied on in December, 1869, before the death of the intestate, by an execution issued on the Marshall judgment; that this prior lien thus fastened on it in the lifetime of the intestate, held it, and under it the land was sold, and she purchased it; that she paid for it with the proceeds of the life policy, which had been taken out in her own favor and for her sole and separate use, and claims she had the right so to purchase and hold the property as her own, free from the claims of these creditors.

The question on this aspect of the case is, on the theory of the bill, whether an administratrix, or any personal representative, having no assets with which to pay the judgment debt, and no prospect of any, by due diligence in management of the affairs of the estate, can buy and hold lands, or an interest in such, levied on in the lifetime of the intestate, and sold by an officer by virtue of such levy; or, whether such personal representative, purchasing with his or her own money, under the above state of facts, is compelled by law to hold the lands thus purchased as equitable assets of the estate, and subject to the claims of creditors of the intestate.

The principal question presented, however, is the plea of the statute of limitations of three years interposed by the respondents, or of three years and six months, the parties complainant being, as we have said, non-residents of this State, and having that time in which to bring suit under our statute.

It is clear, on the facts we have stated, the bar of the statute has *prima facie* attached, the administration having been granted on the 1st of February, 1870, the first bill filed March 20, 1874, and the other September 18th of the same year.

The effect of this is sought to be avoided by virtue of the act of 1865, ch. 10, sec. 3—Code, sec. 2762*b*—which is: "If at any time any cause of action shall accrue against any person who shall be out of this State, the action may be commenced within the time limited therefor, after such persons shall have come into the State; and after any cause of action shall have accrued, if the person against whom it has accrued shall be absent from or reside out of the State, the time of his absence or residence out of the State shall not be counted as any part of the time limited for the commencement of the action."

If this question of the statute of limitations is solved in favor of the defendants, it is conclusive of the rights of complainants.

It might well be doubted whether complainants have shown by allegation of the facts of absence with sufficient definiteness, with the *prima facie* case that arises from the actual lapse of time shown, which is sufficient to create the bar of the statute. It is

Taylor *v.* McGill.

stated, however, that the administratrix was absent from the State a good part of the time since she had been administratrix, but this incidental statement, it is clear from the connection, was not put in by way of meeting the question of the statute of limitations, but for a different purpose.

But, assuming the fact to be sufficiently averred, the question is, whether the statute we have cited, of 1865, has any application to the case now in hand.

It was passed immediately after the war, to meet the facts resulting from the disturbed state of society of that period of our history. It provided for two cases. The one where a cause of action had accrued, and at the time the person liable was absent or out of the State, and in such case the suit could be commenced within the time limited by our statute after the return of such person. The other case is where the absence or residence is after the accrual of the right of action, and then the time of such absence or residence out of the State shall not be taken as part of the time limited for the commencement of the suit, that is, the time of absence should not be counted.

What is not within the purpose or meaning, nor within the mischief to be remedied by a statute, cannot be held included in the law, even though literally the language might include it. We take this to be a sound principle of exposition axiomatic, or almost so in our law.

Is the case before us under this rule within the statute referred to?

We have held that administrators are within this

statute, and their absence will prevent the running of the statute for the period of such absence. This ruling we think was correct, and adhere to it.

But these were cases where a personal judgment against such representative was sought, or rather, where suit was brought against the representative to obtain a judgment against him in his representative capacity, in order to reach the personal assets in his hands to be administered.

But this ruling has no application necessarily to a different case, in which entirely dissimilar elements may be found.

The clear purpose and purview of the statute is, that where the party is prevented from having his legal remedy by non-residence of defendant when his right of action accrues, or by like absence or non-residence commencing after the right accrues, that this absence or non-residence, for the time it exists, shall not be held to constitute a bar to the right of action possessed by the party thus prevented from enforcing it by inability to have personal service of process on the party against whom it existed.

The nature of this suit, then, will solve the question as to the application of the statute.

Could the parties to these bills have proceeded, within the time of absence of the administratrix, to enforce the precise claim they now make as creditors of A. Hynes Ewing, deceased, against his real estate, or interest which he owned in real estate of his deceased father, under the facts stated in these bills? There were no personal assets to be exhausted before

proceeding to subject the real estate descended to the payment of the debts of the deceased debtor. The heirs of said deceased are not alleged to have been non-residents, nor any difficulty in making them parties to a proceeding under the act of 1827, sec. 2267 of the Code. By this section this proceeding may, it is true, be instituted by the administrator, but precisely the same right is given on the part of "a *bona fide* creditor whose debt remains unpaid." Either may file his bill or petition in the courts having jurisdiction, have an account of the debts due, and a sale of the land for their payment, when they are shown to exist as required by the statutes.

We can see no possible difficulty in the way of these creditors had they chosen thus to proceed. It might have been the same proceeding in substance as the one now before the court, but there was no legal obstacle to such a proceeding. The fact that the widow and administratrix had purchased the lands, might have been alleged precisely as here, and she have been made party by publication; the court having the property under its jurisdiction and control, could have effectuated a decree against it, and thus, if these creditors had the right now claimed, they could have made them good and effectual for the satisfaction of their debts. The heirs of the deceased would have been necessary parties to this proceeding, and so they are in strictness in this case, which could not be effectually conducted to the result sought without them.

We have not noticed this objection, though urged

in argument, because we see the case can be adjudged against the complainants, on the view taken, without reference to it except as above.

The principle we decide is, that where the party had his remedy complete and unaffected by the absence of the administrators or defendant, then such absence has not affected his right to sue, and is therefore not within the purpose of the act of 1865, preventing the lapse of time effectuating the bar of the statute during the absence of a party to be sued.

For these reasons we think, in any aspect of the facts as to absence, the bar of the statute of three years is complete against the claim of complainants, and dismiss their bills with costs.